May it please the Court, my name is Kevin Calvo with Randy Bachrach. We represent the appellant Lea Blue. I'd like to reserve three or four minutes for rebuttal. There's three issues I want to address this morning. The first one is whether the Court's ruling on Unum's 12 v. 6 motion dismissing Lea Blue's claim for benefits was error. The second issue is whether Unum has standing to bring its counterclaim. And the third one is the issue of whether the relief that the Court granted to Unum was truly equitable relief that was available under ERISA. And while the third issue is perhaps the more interesting issue, if we prevail on either of the first two issues, we're never going to have to get to the third issue. So I want to talk about those two issues first. The Court granted the 12 v. 6 motion on Unum's motion claiming that she had failed to exhaust her administrative remedies. She pled in the complaint that she had exhausted the administrative remedies or that she was deemed to have exhausted them because Unum failed to respond to the additional medical information she submitted in support of her claim for benefits. On a What Judge Bolton did, however, in her order on the 12 v. 6 motion was to consider facts outside of the pleadings and reach the factual conclusion that Dr. Profrock's letter that he sent in within the time to appeal doesn't constitute an appeal. Now, if we're correct about that, that the 12 v. 6, granting the 12 v. 6 motion was error, and then she ultimately prevails on her claim on the merits in the district court, the benefits to which she would be entitled would be more than enough to offset the claim for overpayments, and then we don't ever have to get to the Was the letter attached to the complaint? The Was the letter attached to the complaint? The letter was referenced in the complaint as was the entire claim file. So it would have been appropriate for the Court to view the contents of the letter and consider it right? To view the contents, yes, but not to reach the conclusion that it doesn't constitute an appeal. Why not? Because that's a factual conclusion that's inappropriate on 12 v. 6. That would be more appropriate for Rule 56 motion. Because the only requirements for an appeal under the plan or under ERISA is that it be in writing and it be within 180 days of the decision. And there's no question that they thought this was a challenge to their decision, because the claim file notes say plainly we ought to inform either Ballew or Dr. Profrock that his letter doesn't change our decision. I mean, they accepted Looking at the letter itself, if the Court could determine as a matter of law that the letter didn't constitute an appeal, would that be appropriate? I don't think you can make that determination as a matter of law, because there's so few requirements as to what constitutes an appeal. Other than being in writing and being within 180 days, I've seen appeal letters that simply say, we're done by pro se, I appeal. And that constitutes an appeal. So is your argument that it has to be, we have to agree that it's an appeal, or are you arguing, I thought you were also, or either or, arguing, appropriately, as an either or argument. I read the letter of December 27, 2006, as saying, if you have additional information to support your request for disability benefits, it must be sent to my attention for further review at the address noted on this letterhead within 180 days of the date you received this letter. However, if you disagree with our determination and want to appeal, you must submit a written appeal. This appeal must be received within 180 days of the date. If the letter from the doctor to the other doctor, whoever it was, is construed as complying or intended to comply with the first part of that, why wouldn't that supersede the need to find whether or not you'd filed a written appeal? Well, that can be, it's, the letter, I think, is ambiguous as to what the requirements are. If you submit additional medical evidence, that would, and which they say they're going to review, but then they don't ever communicate to her what the result of that review was. Had they said to her, it didn't change her opinion, there's still, she still would have been within 180 days. But it's really an invitation to extend the review process to say, give us some more stuff. And that typically extends the time to appeal. So there would be 180 days from when they said, that didn't change our mind. But in the context of an appeal itself, sending in additional medical evidence just by itself can constitute an appeal. The only, if there had been a post-it on the front of that letter that said, I appeal, from Loya Blue, that would constitute an appeal under the regulations and under the plan documents. Was there additional medical evidence presented? Well, it certainly was received by UNUM as an additional But my question is, was there additional medical evidence, or was there an explanation of the evidence that it offered? There was additional medical evidence to the extent that Dr. Hogan spoke to Dr. Profrak, Profrak, and in her letter is reciting what she believes he said. And he's telling her that's not what she said. So his opinion, his correct opinion, is additional medical evidence. It's often the case where what you submit on appeal is just a declaration by the treating physician saying, this is my opinion, and this is where you got it wrong. That's a typical appeal letter. That's a typical piece of evidence you submit on an appeal. That would have been sent to the address for appeals, right? Correct. But the case, I mean, we've cited a case in the brief that says directing it to the wrong address is really just, is not a substantive error, especially when it gets to the people who are making the claim decisions. In the claim file How do you look at all that and determine as a matter of law whether it's an appeal or not? There are no factual determinations in looking at both letters and deciding whether or not there was an appeal. Well, you have to apply what are the criteria for an appeal and whether this meets those criteria. That would be a factual issue. What are the criteria for an appeal? In writing, within 180 days. There's no question that's the writing within 180 days. It's within the appeal deadline, and it's challenging their decision. I don't know how you can not look at that letter and reach the conclusion that it's not an appeal. It was a direct challenge of the decision. Do you want to address the overpayment tracing or that argument, assuming we do have to get to it? Well, assuming you do have to get there, the difference between this case and Saraboff is where the money goes. In Saraboff, the Mid-Atlantic paid money to medical providers. And under the agreement, under the terms of the plan, that gave them a right to the money coming back from the third party who was liable for those medical damages. So the relaxing of the tracing requirement in that case was because Mid-Atlantic's money didn't go directly to the claimant. They said, well, Mid-Atlantic money goes to the medical providers, and the money coming back from the third party, we're going to treat that as the same money. And that's the relaxed tracing, saying that the money Mid-Atlantic paid is the same money coming back from the third party. In this case, Unum's money goes directly to Blue, and they're claiming a lien on that money. So there's no need to relax the tracing requirements. We've done it. We've done the strict tracing in this case. They're asking to be excused from that. We've shown them where all their money went. Tracing assumes that there's an equitable claim. I thought your argument was that there was not an equitable claim here, not an equitable remedy here. It's really a legal claim for damages. The relief they got was a legal claim, because it was for the full amount of what they calculated to be the overpayment, without any regard to whether Blue actually had that money in her possession at the time the constructive trust arose. Our argument was that, assuming they have standing to bring the claim, that when the constructive trust arose, they were entitled to recover only the overpayment she still had in her possession, because that's the rule that was announced in Great Western and clarified in Sereboff. You have to identify a particular fund that's in the defendant's possession distinct from her general assets. The money doesn't become an overpayment until 2008. In 2004 to 2006, when they're paying Blue LTD benefits, it's not their money. It's not an overpayment. It's her money. It's her general assets. She's allowed to spend the benefits. There's nothing inappropriate about her spending those benefits, and she could have spent them down to zero, and there'd be nothing wrong with that. So in 2008, a year and a half after she stops getting benefits and the Social Security Administration awards her benefits, the distinct fund that's been identified, the overpayments, never exist. So you're not arguing, assuming that they have standing, the fiduciary, to bring the equitable claim, that it's an equitable claim, but they failed to trace? Correct. And we provided them the bank records that show them exactly, because the money went directly into her checking account. We showed them exactly how much money was still in her checking account on the day of the SSA award, and we said, your equitable relief is limited to the amount of money of yours that she still has. We did the strict tracing. In what case are you saying, are you relying upon the argument that the equitable claim is only for the money that belongs to the insurer? I'm drawing that conclusion from Great West v. Newton and Mid-Atlantic v. Cerro Boca, because the familiar rule of equity that they talk about, those are the requirements, that the constructive trust only extends to the money in the possession of the defendant when the constructive trust arises. Now, our circuit has not adopted that approach. I believe this is a case of first impression in the circuit. That's what they're saying. Okay. Equitable. If we're trying to do equity, would it be equitable to allow someone to spend the money that was awarded to it by the disability insurance, and then agree to an offset, but yet not honor that? Would that be equitable? Well, the agreement doesn't – is – what you're – the solution to that inequity is not an equitable remedy. It's a legal remedy. They have to have a money judgment for the amount of money they overpaid. Well, I thought you agreed that this was an equitable – The claim itself is equitable. The remedy is limited to the amount of money that she has when the constructive trust arrives. Well, maybe and maybe not. We haven't decided that. But I'm just asking you purely an equitable remedy. Would it be equitable for the insurer not to be able to get the offset that was agreed upon? Would that be equitable in your view? Well, you're – Arie asked me is it fair or is it equitable in terms of – It's fair. Equity is supposed to be concerned with fairness. It's – it would seem like a windfall to Blue for her to be able to keep the Social Security benefits, but they're not going after the Social Security benefits. They specifically disclaimed that their interest is in a lien on the Social Security administration benefits. They can't do that. All the cases that we've cited, whenever they consider 42 U.S.C. section 407, reach the conclusion that you can't have a lien on the Social Security administration benefits. So that means – I thought we got a 28J letter citing a case that said there can be a lien on Social Security benefits. That's the Funk case. Right. But in that – the Funk case. Right. But in that case, they claimed the Social Security benefits as the fund that they were going after. That was more like Saraboff in that they were claiming not a lien on their overpayments. They were claiming a lien on the actual benefits. And Funk doesn't consider 42 U.S.C. section 407. They don't – they haven't got their head around the idea that the Congress has said you can't attach Social Security benefits. You can't have a lien against it. So Funk is wrong in that regard. I see I'm down to two minutes. I want to reserve that. Save your time. May it please the Court. Lawrence Kasten for the appellees. The Saraboff case clearly holds that restitution is equitable if it targets a specifically identifiable fund that's created by language in the plan. I think it's important to talk about what the equitable lien was in this case. It was not on the benefits. It was not on the Social Security benefits. It was on something called the overpayment. And what the overpayment was was the amount of money that had been paid to – a portion of the amount of money that had been paid to Ms. Bill Yu that was determined to be an overpayment once a Social Security award was made. The Social Security award is merely the yardstick by which that fund is defined. So Unum pays $100 to Ms. Bill Yu. Social Security comes and awards $20 in benefits. By that yardstick, it's determined that $20 that was previously paid becomes the overpayment. And that's what the lien is on. Okay. So that's kind of a fictional lien at that point. Because if she spent the $20, then what are you liening? Sure. I think a clear distinction has to be made between the contractual fund that's being identified and the dollars that are in that fund. Let's – I think it's a useful analogy to think about a pot and then the dollars that come in and out of the pot. And what Sereboff says is so long as you define the pot and it's specifically identifiable, if it's an equitable lien by agreement, we don't worry about tracing the dollars that were in there. So what are you saying? Are you saying then that you should be able to get satisfaction from the Social Security payments? Is that your bottom line? I think it's – I don't know. It sounds like it's true that she has converted the overpayment to other property. I think the bottom line is that we can recover from other assets that she has. If the only asset she has – I don't know – if the only asset she has is in the form of Social Security benefits, is it your argument that those benefits can be tapped to repay the fund? I think that she, if she's able to satisfy the judgment, will have to satisfy the judgment from whatever funds that she has. What do you do if Congress has said those funds are not subject to a lien? How do you get around that? It isn't a lien on the Social Security benefits. And I think, again, I go back to the analogy of the pot and the dollars in the pot. A dissipation argument ultimately is a euphemism for tracing. It means I took those dollars and I turned them into something else. And what the Sereboff case says very clearly is that's not what we're concerned about for figuring out whether or not one can get a judgment. I'm sorry. That's not what we're concerned about for figuring out whether this is equitable relief. If as long as it was an equitable lien by agreement, and I think everyone agrees that this was, I think Your Honor's questions maybe are talking about, well, we get this judgment. Is there anything that we can do with it? And it may not be. It may be that she has defenses with respect to execution on a judgment if all her assets are Social Security. I'm not a collections lawyer. I'm not sure. But I think that those kind of arguments are different from the core question under Sereboff, which is a subject matter jurisdiction under ERISA question that ultimately turns on equity versus legal remedy. At the end of the day, I'm not sure. Oh, Your Honor, I'm sorry. You asked a question about equity and fairness. And I think one thing that should be noted here is that if this Court were not to follow some of the other cases that we've cited and decide these overpayments can't be recovered, I think by winning this case, Ms. Bilyeu could be creating a problem for others in her same situation. What the plan here allowed the insurer to do was to estimate an amount of Social Security benefits that the claimant might receive and reduce benefits by that amount. However, it also had an exception. It said if you agree to this, to give us a lien on the overpayment, we'll pay you your entire benefit so long as we get paid if Social Security awards you benefits. I fear that a rule that said that plans can't go after these funds will lead to a circumstance where what the plan does is simply estimates benefits and reduces the benefits given and then makes up for it if no Social Security is awarded. At the end of the day, I'm not sure, standing here, I can be any more articulate on the Sereboff issue than the First Circuit was in its recent case, the Cussing case, 592F3 at pages 230 to page 232. It says pretty much everything that I would say. I think it's directly on point. It addresses all these issues about equitable lien, lien by tracing. It addresses the dissipation argument. And I do think it's persuasive with a clearly understood reading of Sereboff. Did you cite that case in your brief? We did, Your Honor. Okay. I have one question, just reading from Sereboff that troubled me, is that said referring to Knudsen case, the impediment, anyway, Knudsen is not, is distinguishable here. As the Fourth Circuit explained below in this case, Mid-Atlantic sought specifically identifiable funds that were within the possession and control of the Sereboffs. That portion of the tort settlement due Mid-Atlantic under the terms of the ERISA plan set aside and preserved in the Sereboffs' investment accounts. That was a discrete race, if you will, for the constructive trust to attach to. In this case, there is no race. You're just calling it, you're saying, well, it's overpayments. What do we make of the set aside and preserved? I think, again, it comes down to the distinction between the dollars and the pot. And I think what Sereboff was saying and the reason it distinguished Knudsen was that the pot in the Knudsen case was under the control of the state reimbursement funds. No, but they say, unlike Great West, Mid-Atlantic did not simply seek to impose personal liability for a contractual obligation to pay money. That's what you're basically saying. No, but it can't be that all they were talking about there was the dollars. What they were talking about was the fund, because they go on to say that tracing isn't required. And I think at the end of the day, that's just a true to say that the dollars have to be preserved is a tracing argument. Okay. Why don't you go to Gutser Point, Melody? Counsel, before you leave that, you said you cited the Hudson case in your brief, the red brief. Cusson, yes, Your Honor. Oh, Cusson. C-U-S-S-O-N. I'm sorry. Oh, I thought you said Hudson. Okay. The ‑‑ if I can move now to the ‑‑ Yes. On the next one, would you address the question I asked, Counsel, about the letter? The letter that goes to the doctor and presumably to the claimant here provides two options. It said, if you have additional information, send it to us, or you have to appeal. So the claimant, through her doctor, sends in additional information. Why wouldn't the layperson in that situation believe that she had exercised an option which says, I'm going to give you more information? She wouldn't think she would have to go file an appeal at that point because presumably she's going to wait to see what Unum does with that information. Internally, Unum actually does look at the letter and says, in effect, treats it as additional information. So under the principles of ERISA, being there to protect the claimants, why wouldn't that be, if we're construing it as a matter of law, sufficient to constitute an appeal? I don't agree with the court's reading of the letter. I think it provided two separate options. It doesn't say, yes, but it doesn't say, and the implication is, if you've got more information, then send it to us, or you can appeal. If I'm going to send you more information, I'm going to expect, before I file an appeal, to know what your position is. If you change your mind, why do I, as a layperson, have to go out, either hire counsel or spend the time drafting a protective appeal that lawyers may love, but I do not understand why a claimant would in any way think that if they're going to have their doctor send responsive information in an invitation to do so, that Unum wouldn't, at a minimum, say, okay, we've got it, but we have to tell you if you, you know, the clock is ticking. I just find it very contrary to my understanding of what the congressional policies are and court policies are with respect to communication, and particularly in this circuit, of interactive communication between the beneficiary and the plan administrator to make sure that the beneficiary knows precisely where they stand. I understand the court's question, and respectfully, I disagree with what the letter says. I think it says very clearly, it presents two separate options. It says, you can send me additional information if you'd like. However, if you disagree with our determination. Yes, but what determination? What determination? Why are they asking for additional information? Why? It's presenting the claimant with two different options. Why are, why is Unum asking for additional information? In case the claimant wants to say, when you made this claim determination, there was something that you didn't consider that I'd now like you to know. That's okay, and so they do that. Let's suppose that she did specifically that, instead of responding to the, in the way the letter said. I, the additional information that you should have considered and would cause you to change your mind is X. Are you saying that then she would nonetheless, absent any response from Unum, have to file an appeal under the 180-day time limit? Absolutely. Okay, that's fine. I understand your interpretation, and if you think it's clear, and you think it's something that the court can draw as a matter of law. Absolutely, and may I read you the part of the letter on which I'm relying? The letter, after setting forth the two options, if you have additional information sent to me. However, if you'd like to appeal, and then it goes on to say what that means, it says you'll get a de novo review, I won't be the one deciding it, all these, all these things. It says, if you don't accept that option, you can't go to court. What it says is, unless there's special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim. If we do not receive your written appeal within 180 days of the date you received this letter, our claim determination would be final. But also, I don't think that's this case, Your Honor, and if I can, in the brief time I have left, if I could talk about the communications here. Before we do that, I have a more fundamental question, problem, in that this issue was not even raised in the opening brief regarding whether or not the letter constituted an appeal. And generally, if a matter is not raised in the opening brief, we do not address it. So what's your response to that? That's right, Your Honor. And we attempted in our answering brief to present all the arguments in the event that the court found that things had been properly preserved. If I can go back to Judge Fischer's point, I think the communications here are important. The communication that Unum originally sent, the claim denial letter, was fairly specific. And what it said was, it explained in clear language the basis for the denial. Ms. Bill U's Bichette's disease has been quiescent for a long time. Therefore, we conclude that it's these mental and emotional conditions that are causing her to, her disability, and she's been off work. If I could read you from what Dr. Prufrock says. Now remember, Dr. Prufrock's letter doesn't even respond to the claim denial. In fact, it's not even clear that he knew that the benefits had been denied. He was responding to a letter that had been sent prior to the claim denial. Here's his concluding paragraph, and I'd like to quote it. There is little doubt that Ms. Bill U was doing well enough with her health and emotional issues to be employed by Discover for 18 years. That's exactly what the claim denial had said. The harassment that she received, and what he's talking about here is a claim that she had against her employer that she was being harassed, was a direct contributor to her decline, and she continues to suffer mental and emotional anguish due to the way that she was treated by her employer. Mental and emotional anguish. So we don't have in the record why it is that Unum didn't respond to Dr. Prufrock's letter. Well, that's because this is on a motion to dismiss. That's right. This is not summary judgment. But I think it, I think just looking at the communications themselves, one can see that, one can observe that the claim letter and the letter that Dr. Prufrock sent in were actually not inconsistent. And so the point is I don't think that this case falls within the lack of meaningful dialogue cases that this Court has found. Cases where the insured, the claimant says one thing, the insured pretends they're making a different argument to shoot it down. I just don't think we're in that universe. I see that my time has expired unless the Court has other questions. Thank you, Your Honor. Thank you. The place where Kusan from the First Circuit and Unum gets it wrong is that Mr. Carsten said we're not looking to impose a lien on the benefits and we're not looking to impose a lien on the Social Security award. Well, he said the lien is on the overpayment, not on the benefits. That's what I understood. But the overpayment is from the benefits. He's saying it's not on any specifically identifiable fund. It's on the amount. But there is a difference between the benefits and the amount of the overpayment because those are not necessarily the same. They're exactly the same, Your Honor. There may be more benefits paid than this actually recovered from Social Security. Theoretically, I'm saying. But the overpayment is what's, is the amount of, is part of the benefit. She gets paid. That's what you're saying. She gets paid $2,500 a month in LPD benefits. When Social Security awards are $1,500, the $1,500 of that original $2,500 is the overpayment. It's their money in her possession at one time. It's gone by the time, a year and a half later after the benefits run out. But they haven't identified the pot. He's saying it's the pot. Well, what's in that pot is her general assets. That's specifically precluded as equitable lien. When he says it's the amount that we have a lien on, that's admitting it's legal relief. It's just a money judgment, which is what the court awarded. Well, a lien isn't legal relief. Equitable lien is not legal relief. Correct, but the judge. You have to transpose it into something else before it becomes legal relief. The judge, the award, the judge's order doesn't say you have an equitable lien in this amount on this set of funds. It says you have a judgment for the full amount of the overpayments. It doesn't mention equitable relief. It is a money judgment. That's the way it's written. That's enforcing an equitable lien. Well, but the equitable lien should have been limited to the amount of money in the identifiable fund. I can't argue with that. I'm not sure I agree with that. I have four seconds. No, you're over four seconds. I beg your pardon. Thank you. Thank you. Thank you, counsel. The case argued is submitted and we'll stand in adjournment, I think. All rise.
judges: Fisher, Rawlinson, Cjj Wright (C. Cal.), Dj